# WolfBlock

Wilmington Trust Center, 1100 North Market Street, Suite 1001, Wilmington, DE 19801
Tel: (302) 777-5860 ■ Fax: (302) 777-5863 ■ www.WolfBlock.com

Kathleen M. Jennings
Direct Dial: (302) 777-6926
Direct Fax: (302) 778-7906
E-mail:    kjennings@wolfblock.com

July 25, 2008 (originally submitted July 14, 2008)

The Honorable Sue L. Robinson
U.S. District Court
844 N. King Street
Lockbox 31
Wilmington, DE 19801

Re:    U.S.A. v. Darnell Morris; Cr.A. No. 07-149-4 (SLR)

Dear Judge Robinson:

Upon review of Darnell Morris' file in preparation for his sentencing hearing scheduled before You Honor, it came to my attention that, on July 14, 2008, I clearly inadvertently submitted a draft letter to the Court, and not the final version. In light of this error, please accept this letter as the corrected and final version of the same.

I write in advance of Darnell Morris' July 29, 2008 sentencing hearing to provide the Court with notice of both the 18 U.S.C. § 3553(a) factors, as well as other factors, that favor mitigation, as follows:

1.    The United States Sentencing Guidelines list one relevant ground for departure. U.S.S.G. § 3B1.2 provides that an offender may qualify for a downward adjustment for being a "minor participant" in an offense. Commentary note 3(c) to section 3B1.2 makes clear that the 3B1.2 determination is "heavily dependent on the facts of the particular case" and is determined by weighing the totality of the circumstances. Courts have broad discretion in determining whether a defendant qualifies for a downward adjustment. *See, U.S. v. Gonzlaez*, 238 Fed.Appx. 829, 833 (3d Cir. 2007). Factors relevant to this determination include "...the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Garcia*, 920 F.2d 153,155 (2d Cir. 1990); see also *United States v. Price*, 13 F.3d 711, 735-736 (3d Cir. 1994). Defendant is scheduled to meet with Assistant United States Attorney Keith Rosen to provide a "safety valve" proffer on July 23rd. Therefore, Defendant respectfully requests the right to articulate the factual basis for this adjustment following the proffer. However, it is noteworthy that until Darnell Morris appeared at the

WIL:125224.2/MOR338-831107

Boston, MA ■ Cherry Hill, NJ ■ Harrisburg, PA ■ New York, NY ■ Norristown, PA ■ Philadelphia, PA ■ Roseland, NJ ■ Wilmington, DE

WolfBlock Government Relations - Harrisburg, PA ■ WolfBlock Public Strategies - Boston, MA, New York, NY and Washington, DC

WolfBlock LLP, a Pennsylvania Limited Liability Partnership

The Honorable Sue L. Robinson
July 25, 2008 (originally submitted July 14, 2008)
Page 2

TGIFridays restaurant on the evening of the transaction, his name had not even been mentioned as a participant. Indeed, as Detective David L. Boney's Crime report notes:

> On the above date and time writer contacted a confidential informant (CI) regarding an illegal drug deal that was going to take place in the parking lot of the TGIFridays Restaurant..., which is on the corner of Lockerman St. and US 13. The CI was going to broker a two kilo deal where a black male subject nicknamed Ant along with his cousin were gong to purchase the cocaine from a black male subject nicknamed "Q" for $22,500 a kilo. The CI told writer that "Q" would have the cocaine packaged inside a box of Tide Laundry Detergent. Ant was later identified saw Antoine West, his cousin was later identified as Andreus Scarborough, and "Q" was later identified as Nathan Weeks.

Defendant accompanied another individual to the scene. At some point, that individual ordered Defendant to bring an envelope of money to the vehicle in which the transaction was to occur. Defendant appears only at the latter stage of the transaction. The video surveillance of the parking lot confirms this sequence of events. While counsel for Defendant does not have access to the proffer of any codefendants, it appears that Defendant's role is markedly less serious than that of his codefendants.

    2.    The 18 U.S.C. § 3553(a) factors of which the Court should consider when imposing a sentence on Mr. Morris, are as follows:

    (a)    The nature and circumstances of the offense and the history and characteristics of the defendant. Defendant recognizes the serious nature of his involvement in the offense. He was not the catalyst for the crime, but he knowingly participated in it. Defendant's history and character paint a picture of him that demonstrates many fine qualities. As the letters attached to the PSR attest, Mr. Morris is a devoted father to his son and he is very involved in his son's life. Darnell Morris grew up in a neighborhood where crime and failure were the norm, yet he graduated from high school, and has been gainfully employed. Mr. Morris provides financially for his family. He has been instrumental in the success of many members of his extended family. He has also been a contributing member of his community, having coached youth league basketball for years. Prior to his arrest, Mr. Morris was working to better his employment prospects by studying to become a licensed bail bondsman. He plans to redirect his studies even while in prison.

    (b)    The need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense. Even if the Court were to fashion a sentence below the Guideline range, Defendant will be serving significant time in prison. He was arrested on August 8, 2007 and remained incarcerated until December 6, 2007. As the Court is aware, he was reincarcerated following his guilty plea on April 10, 2007. Defendant has served approximately 7 months in jail to date, and realizes that he will be serving additional time in jail. The need to promote respect for the law and to provide just punishment speaks to continuity in sentencing. However, each Defendant is unique. As long as a sentence is

The Honorable Sue L. Robinson
July 25, 2008 (originally submitted July 14, 2008)
Page 3

compatible with the Guidelines while taking into account the unique aspects of the case and the offender, this goal can certainly be met. Significantly, there is no statutory minimum mandatory jail sentence required in Defendant's case.

(c)     The need to protect the public from further crimes of the defendant. At 28 years old, Darnell Morris has zero prior criminal history points. Despite his use of illegal substances, Mr. Morris was able to remain drug free while on bail pending trial. He has great motivation to change his life, and he has demonstrated the beginning of that transformation. A drug program would greatly benefit him while incarcerated. All other indicia of his life point to an optimistic outcome, as he has a good employment history, a close knit, supportive family and the motivation to change.

(d)     The need to provide defendant with treatment. Mr. Morris could benefit from drug treatment, and he would benefit from a sentence designed to provide treatment without unduly prolonging his incarceration.

(e)     The kinds of sentences available. Given Defendant's Guidelines range in Zone D, he must serve whatever sentence is imposed in prison. However, the drug treatment program provides significant incentive for Mr. Morris to succeed, as well as a much needed treatment and rehabilitative environment.

(f)     The Guideline range. Based on the circumstances, the range assigned far exceeds the necessary punishment in Mr. Morris' case. Assuming he receives drug treatment while in prison, there is no compelling reason to warehouse him. On the other hand, there are compelling reasons to vary from the range. For instance, Mr. Morris has no criminal history points; he was not the catalyst for this offense, albeit he willingly participated; he has an outstanding history of devotion to family and to his son; He has volunteered to better his community, and he has been gainfully employed.

3.     Other factors. Mr. Morris' fiancé, LaTosha Anderson, has written to the Court detailing the financial strain Mr. Morris' incarceration has placed on her family. Ms. Anderson additionally suffers from significant illnesses which consist of ventricular tachaeardia (irregular heartbeat), rheumatoid arthritis and lupus (a muscular disorder). I will be supplying the Court with records that document her condition. U.S.S.G. § 5H1.6, Application Note 1:B details the circumstances when the loss of caretaking responsibilities may warrant departure. Even if circumstances do not fit the guideline precisely, the Court may nevertheless consider them under its discretionary authority. *Gall v. United States*, 128 S.Ct. 586 (2007).

The Honorable Sue L. Robinson
July 25, 2008 (originally submitted July 14, 2008)
Page 4


I have not elaborated upon the above factors, but they provide an outline of the arguments that will be presented at sentencing. Thank you for the opportunity to provide this letter in support of Mr. Morris.

Respectfully submitted,

Kathleen M. Jennings

w/ PERMISSION

CHANDRA RUDLOFF

KMJ/alv

cc:    AUSA Keith Rosen
       Jean M. Lubinsky, U.S. Probation Officer